DETROIT EDISON COMPANY *v.* DEPARTMENT OF REVENUE.

1. Taxation—Intangibles—Accounts Receivable—Rules and Regulations—Computation of Tax.

   It is presumed that computation of intangibles tax for several years on accounts receivable by body administering the law providing for the tax relied on rules in effect as promulgated by the administrative bodies (Act No. 301, § 3, subd. [a] [2], Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941; Act No. 122, Pub. Acts 1941, as amended by Act No. 103, Pub. Acts 1945; State tax commission intangibles tax rule No. 9 [1940]; Department of revenue intangibles tax rule No. 11 [1941]; No. 25 [1943]).

2. Statutes—Construction—Ambiguity—Executive Construction.

   In construing a statute the language thereof is controlling, although if that language is ambiguous, the executive construction given to it by those charged with carrying out the will of the legislature is entitled to careful consideration.

3. Same—Intent.

   It is the duty of a court in interpreting the language of a statute to ascertain and declare the intention of the legislature and the intention, so ascertained, must control.

4. Same—Construction—Intent.

   In construing the provisions of a statute the court does not consider the wisdom or the policy of the legislature in the enactment but applies fundamental rules of statutory construction in order to determine the legislative intent and if the language of the statute is plain and unambiguous no interpretation is necessary.

5. Taxation—Exemptions.

   Generally an exemption from taxation is subject to a somewhat strict construction and may not rest in inference or implication but must be granted in clear and specific terms.

6. Same—Intangibles—Accounts Receivable.

   "Accounts receivable," as that term is used in the section of the intangibles tax law pertaining to deductions and exemptions,

are such as have been derived by the taxpayer from his business (Act No. 301, § 3, subd. [a] [2], Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941).

7. Same—Intangibles—Accounts Receivable—Accounts Payable —Mortgage Bonds—Construction Notes.

Mortgage bonds and construction notes, given for the purpose of increasing capital assets of taxpayer under the intangibles tax law, are not deductible as accounts payable, from its accounts receivable, in computing tax on latter (Act No. 301, § 3, subd. [a] [2], Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941).

8. Same—State Board of Tax Appeals—Decisions.

The State board of tax appeals is a tax-collection agency and not a judicial body and its decisions are not entitled to the force and effect of judicial precedents (Act No. 122, Pub. Acts 1941, as amended).

9. Statutes—Construction by State Board of Tax Appeals— Dicta.

Decisions of the State board of tax appeals construing statutes, at most, are entitled to consideration on the basis of executive or administrative interpretations of statutory provisions involved in proceedings before the board and statements therein that are merely dicta must be regarded as expressions of opinion only.

10. Same—Amendment—Intent to Change Meaning.

A change by amendment in the phraseology of a statute is presumed to indicate, in the absence of a manifest intent to the contrary, a legislative purpose to change the meaning.

11. Same—Construction—Amendment—Intangibles Tax—Exemptions.

Amendment of deductions and exemptions provision of intangibles tax act, which changed the language of the section by way of addition but made no substantial change in language pertinent to case under consideration is not construed as showing legislature intended to change the meaning of the applicable provision (Act No. 301, § 3, subd. [a] [2], Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941).

12. Same—Intent.

The opinion of the legislature as to the interpretation of a statute, when clearly expressed, is entitled to the utmost respect.

13. SAME—INTENT—ORIGINAL ENACTMENT—SUBSEQUENT AMENDMENT.

    The "intent" of a statute is the one entertained by the legislature at the time of the passage of the act and not the intent as expressed by a subsequent amendment.

14. SAME—AMENDMENT—PRESUMPTION AS TO CHANGE.

    If an amendment to a statute be enacted soon after controversies have arisen as to the interpretation of the original act and the amendment is a formal change, the presumption of substantial change is rebutted.

15. SAME—AMENDMENT—INTENT TO MAKE SUBSTANTIAL CHANGE— INTANGIBLES TAX ACT.

    Where controversy arose as to interpretation of deductions and exemptions section of intangibles tax act between department of revenue and State board of tax appeals and legislature subsequently amended statute so as to clarify its meaning shortly thereafter, the amendment is not construed as having intended to make a substantial change from the meaning theretofore to be given the statute as it had stood (Act No. 301, § 3, subd. [a] [2], Pub. Acts 1939, as amended by Act No. 233, Pub. Acts 1941 and Act No. 165, Pub. Acts 1945).

16. COSTS—CONSTRUCTION OF INTANGIBLES TAX ACT.

    No costs are allowed in action to recover from the State certain intangible taxes paid by plaintiff, in which the construction of the statute is involved (Act No. 301, Pub. Acts 1939, as amended).

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 13, 1948. (Docket No. 33, Calendar No. 43,924.) Decided April 5, 1948.

Action by Detroit Edison Company, a New York corporation, against State of Michigan Department of Revenue and others to recover money paid on intangible tax. Judgment for defendant. Plaintiff appeals. Affirmed.

*Fischer, Brown, Sprague, Franklin & Ford,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and

*T. Carl Holbrook,* Assistants Attorney General, for the defendant.

CARR, J.  Plaintiff herein claims the right to recover from the State certain taxes paid by it for the calendar years 1940 to 1944, inclusive, on intangible personal property.  The payments in question were made under the provisions of Act No. 301, Pub. Acts. 1939 (Comp. Laws Supp. 1940, § 3658–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.556 [1] *et seq.*), the constitutionality of which was upheld by this Court in *Shivel* v. *Kent County Treasurer,* 295 Mich. 10.  The act specifies the classes of intangible personal property subject thereto, provides the rates of taxation and method of computation, allows deductions in certain instances, and directs the manner of making returns and tax payments.  It further provides that any taxpayer considering himself aggrieved by being required to pay an excessive tax may bring action in the circuit court of the county deemed to be the situs of the property subject to taxation·to recover any amount unlawfully levied.  The present action has been brought under this provision.

The act of 1939, above cited, was amended by Act No. 233, Pub. Acts 1941, but without changing the provisions involved in the present controversy.  It was also amended by Act No. 165, Pub. Acts 1945,[*] and Act No. 175, Pub. Acts 1947.[†]  Such amendments, however, being subsequent to the period for which the taxes involved in this suit were paid, are material only to the extent that they may tend to throw light on the interpretation of pertinent provisions of the statute as previously enacted.

The statute included accounts receivable as intangible personal property subject to taxation in accordance with the procedure outlined.  Section 3

[*] Comp. Laws Supp. 1945, § 3658–1 *et seq.*
[†] Stat. Ann. 1947 Cum. Supp. § 7.556 (1) *et seq.*

(Comp. Laws Supp. 1940, § 3658-3, Stat. Ann. 1940 Cum. Supp. § 7.556 [3]) made provision for certain deductions and exemptions in determining the amount of tax liability. Insofar as material to the present controversy, it read as follows:

"Sec. 3. Deductions and exemptions. (a) In computing the tax imposed under this act for any tax year the following deductions may be made:
* * *

"(2) From accounts receivable, including notes given in lieu thereof, subject to tax under this act, accounts payable by the taxpayer, including notes given in lieu thereof, if such accounts payable or notes are incurred or given in connection with the business from which the accounts receivable or notes in lieu thereof are derived."

The provision quoted was re-enacted in the amendment of 1941, above cited, and was in force and effect, by virtue of the original statute and said amendatory act, during the five-year period for which plaintiff paid the taxes that it now seeks to recover. Whether it is entitled to do so depends on the interpretation of section 3 (a), subsection 2.

The declaration alleged that during each of the years from 1940 to 1944, inclusive, plaintiff was indebted to various persons on outstanding mortgage bonds and long-term construction notes and that the amount of such liabilities greatly exceeded, in each year, its accounts receivable. With reference to such liabilities it was specifically averred as follows:

"All of said mortgage bonds and construction notes represented the funding of short-term bank borrowings and accounts payable incurred for labor and material required in building and expanding plaintiff's transmission lines, plants and equipment in order to make electric energy available to its customers. The indebtedness represented by said

bonds and notes was incurred to enable plaintiff to produce the electricity, steam, gas and water sold to its customers from whom its accounts receivable are derived.''

Plaintiff based its cause of action on the theory that the bonds and notes in question were given by it in connection with the business from which the accounts receivable were derived, and that in consequence they were deductible. The answer filed by defendants to the declaration in effect conceded the material facts alleged, but denied the conclusions of law. Thereupon plaintiff filed a motion for summary judgment,* supported by affidavit of merits setting forth that during the period from 1915 to 1932, plaintiff paid out for additional operating plants and facilities the sum of $252,622,110.08, and that during such period general refunding bonds were issued in the sum of $134,000,000 face value. The affidavit further alleged that the entire proceeds of the sale of the bonds were used to pay for the ''acquisition and construction of additional facilities for the manufacture and distribution of electricity, steam, gas and water.'' It further appeared from the affidavit that during the period from 1932 to 1940, the said bonds were refunded, and that the new issues were outstanding during the years involved in this controversy. Plaintiff claimed that it was entitled to deduct them from its accounts receivable.

The affidavit of merits also set forth liabilities incurred during the period from July 1, 1937, to December 31, 1939, in connection with the purchase of additional plant and equipment, and the issuance of $10,500,000 of construction notes which, by their terms, were payable on or before July 1, 1945, with specified annual payments. The funds derived from

---

* 3 Comp. Laws 1929, § 14260 (Stat. Ann. § 27.989).

the construction notes were used to discharge obligations incurred in plant expansion. The affidavit further stated that "no part of the proceeds of the bonds and construction notes mentioned in the preceding paragraphs hereof was used to augment working capital or for any purpose other than to satisfy the company's obligations incurred in plant expansion." Plaintiff asserted that these construction notes were also deductible from its accounts receivable.

Defendants filed an affidavit in opposition to the motion for summary judgment, denying therein plaintiff's claim that it was entitled to deduct the mortgage bonds and construction notes in question from its accounts receivable under the pertinent provision of the statute. Defendants also filed a motion for judgment on the pleadings, which motion was granted on hearing. Plaintiff has appealed.

Under Act No. 301, Pub. Acts 1939, as originally enacted, the administration thereof was vested in the State tax commission, which was authorized to adopt rules and regulations necessary for the administration of the act. In accordance with such authority, the commission, in November, 1940, adopted among other regulations Rule No. 9, which read as follows:

"Notes payable which represent current financing in the regular course of business of the taxpayer will be considered accounts payable under the act. However, notes which in fact represent long-term liabilities or capital financing will not be considered accounts payable."

By Act No. 122, Pub. Acts 1941, which was amended by Act No. 103, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 3695–1 et seq., Stat. Ann. 1947 Cum. Supp. § 7.657 [1] et seq.), the administration

of the act was transferred to the department of revenue which by its Rule No. 11 declared that:

"Only such obligations which in fact are accounts payable, or notes given in lieu thereof, under sections 3 (a-2) of the act are deductible as accounts payable."

In Rule No. 25, effective December 31, 1943, the department further indicated its interpretation of the statute in the following language:

"An account payable is an obligation owing by a person on open account.

"The taxpayer may deduct from accounts receivable or *notes given in lieu thereof* the sum of his accounts payable or *notes given in lieu thereof,* provided the accounts payable or notes given in lieu thereof are incurred in or given in connection with the business from which said receivables are derived. To deduct notes payable from such receivables, the taxpayer must show that the note or notes payable were given in lieu of an account or accounts payable."

Presumably the defendants in refusing to permit plaintiff to deduct its mortgage bonds and construction notes from its accounts receivable for the purpose of computing its taxes relied on these rules. It is their claim in the instant case, in substance, that said rules indicated the proper interpretation of the pertinent provisions of the statute. Plaintiff insists that the rules quoted were inconsistent with the legislative intent and were, in consequence, unauthorized. The language of the statute is, of course, controlling, although this Court recognizes that if such language is ambiguous the executive construction given to it by those charged with carrying out the will of the legislature is entitled to careful consideration. *Boyer-Campbell Co.* v. *Fry,* 271 Mich.

282 (98 A. L. R. 827); *Detroit Board of Education* v. *Superintendent of Public Instruction*, 304 Mich. 206; *Aller* v. *Detroit Police Department Trial Board*, 309 Mich. 382.

It is the duty of the court in interpreting the language of the statute in issue here to ascertain and declare the intention of the legislature. *Kales* v. *City of Oak Park*, 315 Mich. 266. That intent when so ascertained must control. In *Acme Messenger Service Co.* v. *Unemployment Compensation Commission*, 306 Mich. 704, it was said:

"In approaching the question of law involved, we do not consider the wisdom or the policy of the legislature in the enactment. *People* v. *Powell*, 280 Mich. 699 (111 A. L. R. 721). The function of the court is to apply the fundamental rules of statutory construction and thereby seek to determine the legislative intent. If the language of the statute is plain and unambiguous, no interpretation is necessary. *In re Chamberlain's Estate*, 298 Mich. 278."

In considering the question before us it must be borne in mind that the statutory provisions directly involved are not those in terms imposing taxes on accounts receivable or other forms of intangible personal property, but rather provisions allowing certain deductions from such accounts. In practical effect accounts receivable are exempt from taxation to the extent of the deductions therefrom authorized by the statute. As a general rule an exemption from taxation is subject to a somewhat strict construction. It may not rest in inference or implication. It must be granted in clear and specific terms. *Doane* v. *Railway Co.*, 247 Mich. 542; *Remus* v. *City of Grand Rapids*, 274 Mich. 577. The language of section 3 (a) (2), above quoted, clearly indicates that the accounts receivable therein referred to, from which deductions are authorized, are such as

have been derived by the taxpayer from his business. Construing the language used in connection with the other provisions of the act, and in the light of the general purpose sought to be accomplished, it clearly appears that the legislature intended to tax that species of property represented by obligations owing to one engaged in conducting a business and derived from such business but to allow a deduction therefrom of obligations, whether in the form of open accounts or merged in notes, arising out of that business. It may be considered that the expression "in connection with," standing alone, is somewhat lacking in certainty. However, the reference to the accounts receivable may properly be regarded as indicative of an intent on the part of the legislature to permit the deduction of accounts payable arising from the same source as do the accounts receivable. Such interpretation is clearly in keeping with the general purpose suggested by the language employed. If the legislature had intended to permit a taxpayer to offset against the accounts received by him in the conduct of his business obligations that had been incurred in the erection of plants and facilities for the transaction of the business, it is fair to assume that such intent would have been indicated in clear terms. We think that the interpretation of the statute contended for by plaintiff would mean increasing the permissible deductions, and thereby increasing the amount of the exemption, by the inclusion of obligations of a character not contemplated by the legislature. Such was the conclusion reached by the trial court in a well-reasoned opinion in which the practical consequences that would result from an acceptance of plaintiff's theory were indicated in the following statement:

"In other words, no large corporation would pay intangible taxes on its accounts receivable as all of

them have outstanding bond issues in a large amount of money. The court cannot believe that the legislature so intended, but did intend that accounts payable should be the accounts which are similar to the accounts listed in the accounts receivable."

The trial court held accordingly that plaintiff's mortgage bonds and construction notes, given for the purpose of increasing its capital assets, were not deductible from its accounts receivable. Applying well-recognized rules of statutory construction we think that the conclusion reached was correct.

Plaintiff calls attention to certain decisions of the State board of tax appeals, created by Act No. 122, Pub. Acts 1941, hereinbefore cited, in which, it is claimed, said board disapproved of Rule No. 9 of the State tax commission, and the subsequent rules 11 and 25 of the department of revenue. The decisions cited are Doty Discount Corp. v. Department of Revenue, decided February 17, 1943; E. M. Doty, Inc., v. Department of Revenue, decided June 2, 1943; and A. R. Glancy, Inc., v. Department of Revenue, decided February 3, 1944. Apparently in these cases the plaintiff corporations borrowed money for the purpose of carrying on their respective businesses and gave notes therefor. The status of bonds or notes given for capital financing was not in issue. However, in the first decision, the statement was made by the board of tax appeals that:

"It does not make any difference whether appellant's payables constitute current or long-term or capital financing, because the intangible tax act makes no distinction between current and long-term or capital financing."

This statement was quoted in each of the opinions in the subsequent decisions cited. On the basis of the facts involved it may be questioned if the actual

holding of the tax appeal board in any of these proceedings was at variance with that of the trial court in the case at bar.   It is clear, however, that differences of opinion existed between the department of revenue and the tax appeal board with reference to the interpretation of the statute.   The status of the appeal board was considered by this Court in *F. M. Sibley Lumber Co.* v. *Department of Revenue,* 311 Mich. 654, and it was pointed out that under the statute the board is ''a tax collection agency'' and not a judicial body.   It is conceded by appellant that its decisions are not entitled to the force and effect of judicial precedents.   At most they are entitled to consideration on the basis of executive or administrative interpretations of statutory provisions involved in proceedings before the board. Statements that are merely dicta must be regarded, as above indicated, as expressions of opinion only. The issue in the case at bar must be determined by reference to the statutory provision above discussed. *Rudolph Wurlitzer Co.* v. *State Board of Tax Administration,* 281 Mich. 558.

Plaintiff also emphasizes the amendment to section 3 (a) (2), above quoted, made by Act No. 165, Pub. Acts 1945.   No change, except in phraseology, was made by the amendatory act in the language of the subsection as originally enacted in 1939.   However, additions were made thereto so that after the taking effect of the amendatory act it read as follows:

''Sec. 3.   Deductions and exemptions.   (a) In computing the tax imposed under this act for any tax year the following deductions may be made:
* * *

''(2) From accounts and notes receivable, subject to a tax under this act, accounts and notes payable by the taxpayer, if such accounts payable or notes are incurred or given in connection with the

business from which the accounts receivable or notes are derived: Provided, That for the purpose of this provision, accounts payable shall include only current open trade accounts and shall not include dividends, taxes excepting those taxes levied upon or collected from persons other than the taxpayer and received or retained by the taxpayer for remission to a governmental agency, accruals, contingent liabilities or other similar items, and notes payable shall not include bonds, debentures or any obligations due more than 1 year after date of issuance. In case a taxpayer has both income-producing and nonincome-producing receivables the deductions shall first be made from nonincome-producing receivables and the balance, if any, may be deducted from income-producing receivables. For the purposes of this provision bank accounts shall not be considered as accounts receivable. For the purpose of this provision land contracts receivable shall be considered to be accounts receivable and mortgages payable on the same property covered by the land contract may be deducted therefrom."

Said subsection, as quoted, was re-enacted without change in Act No. 175, Pub. Acts 1947. Based on the language added thereto by the 1945 amendment, counsel for plaintiff argue that the legislature must be presumed to have intended to change the meaning of the subsection as it read prior to such amendment. In support of the contention reliance is placed on the decision of this Court in *Lawrence Baking Co. v. Unemployment Compensation Commission,* 308 Mich. 198. There, as in *Bonifas-Gorman Lumber Co. v. Unemployment Compensation Commission,* 313 Mich. 363, and other decisions of like import, it was recognized that a change by amendment in the phraseology of a statute is presumed to indicate, in the absence of a manifest intent to the contrary, a legislative purpose to change the meaning. In the case at bar, however, as before stated, no substantial

change was actually made in the language the interpretation of which is controlling. The situation now before us is not analogous to the facts involved in the cases cited.

We are primarily concerned here with the intent of the legislature of 1939, in the enactment of the original statute, and of the legislature of 1941, which re-enacted, as above noted, the provisions under consideration. The opinion of the legislature as to the interpretation of a statute, when clearly expressed, is entitled to the utmost respect. *People* v. *Oakland County Treasurer*, 312 Mich. 140. See, also, *Iron Street Corp.* v. *Unemployment Compensation Commission*, 305 Mich. 643, where it was said:

"The controlling test as to the meaning of a statutory provision is always the legislative intent when fairly ascertainable. But the 'intent' referred to is the one entertained by the legislature at the time of the passage of the act, and not the intent expressed by a subsequent amendment. In the instant case, to interpret the subsequent amendment as an indication of the legislature's original intent would be mere speculation, not judicial construction."

Defendants insist that the language incorporated in section 3 (a) (2) by the amendatory act of 1945 should be construed as declaratory of the legislative intent in the enactment of the original subsection. It is obviously true that the amendment was in accord with the rules and regulations of the State tax commission and the department of revenue, above quoted, insofar as the matter at issue in the present case is concerned. The practical situation existing at the time of the amendment concerned the divergent views of the department of revenue and the tax appeal board, units of the tax-collecting machinery of the State. It is obvious that the department did not acquiesce in the views of the appeal board

as expressed in the decisions of that board, above discussed. Rule No. 25, above quoted in part, effective December 31, 1943, was adopted after the decision of the first two cases, and the third case was pending at the time. It was but natural that the legislature should have undertaken to clarify the situation through and by the use of clear and specific language. It is conceded that under the statute in its present form plaintiff is not entitled to deduct from its accounts receivable its mortgage bonds and construction notes issued in connection with the extension of its plants and facilities. There is much force in defendant's contention that under the circumstances involved the legislature, in adopting the 1945 amendment, did not intend that its action should be construed as now claimed by plaintiff. It is significant, also, that the amendment to section 3 (a) (2), was subsequent to the opinions of the appeal board, and that the legislature did not in said amendment, or by action prior thereto, indicate its disapproval of the rules adopted by the State tax commission and the department of revenue.

In 1 Sutherland Statutory Construction (3d Ed. 1943), p. 418, § 1931, it is said:

"If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change."

See, also, *Attorney General* v. *Lewis,* 151 Mich. 81; *Hambel* v. *Lowry,* 264 Mo. 168 (174 S. W. 405); *John Morrell & Co.* v. *Unemployment Compensation Commission,* 69 S. D. 618 (13 N. W. [2d] 498).

In view of the factual situation existing at the time of the amendment it is a logical conclusion that the primary purpose of the legislature was, as

above indicated, to clarify the statute because of the differences of opinion existing between the department of revenue and the board of tax appeals. Plaintiff's claim as to the force and effect to be given the amendment is not tenable. The presumption on which such claim is based does not obtain.

For the reasons above stated the judgment of the trial court is affirmed. In view of the nature of the question involved no costs are allowed.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, and Dethmers, JJ., concurred. Butzel, J., did not sit.